Bob Thomas v. The State.

No. 1739. Decided April 24, 1912.

**1.—Gaming—Witness—Codefendant.**

To render a witness incompetent he must be indicted as principal, accomplice, or accessory to the same act for which defendant is indicted, a similar act will not sufficee; and a mere statement from the officer that the witness is incompetent without showing the same as a fact is insufficient. Following Traylor v. State, 23 S. W. Rep., 798, and other cases.

**2.—Same—Insufficiency of the Evidence.**

Where, upon trial of gaming, the evidence was insufficient to support the conviction, there was reversible error. Following Hanks v. State, 54 Texas Crim. Rep., 1, and other cases.

Appeal from the County Court of Johnson. Tried below before the Hon. J. B. Haynes.

Appeal from a conviction of gaming; penalty, a fine of $10.

The opinion states the case.

*Phillips & Bledsoe,* for appellant.—Cited cases in opinion.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of gambling, his punishment being assessed at a fine of $10.

1. A bill of exceptions recites that Richard Gee was sworn as a witness to testify in behalf of defendant. The county attorney objected to his testifying because he was under indictment charged with the same offense. The objection was sustained by the court, and the witness was not permitted to testify. Appellant urged objections, and the bill recites that if the witness had been permitted to do so he would have testified that he was present at the time and place of the alleged game of cards, and that defendant did not play at any game of cards at the time and place alleged in the information, and that no game was being played at such place. Under the recitations of this bill we are of opinion the court was in error. See the case of Day v. State, 27 Texas Crim. App., 143, and Traylor v. State, 23 S. W., 798, both directly in point. See also Secker v. State, 28 Texas Crim. App., 479. The Day case was approved in Griffin v. State, 43 Texas Crim. Rep., 428. In the Day case the court said: "Appellant proposed to prove a material fact by several witnesses; the State objected upon the ground that the proposed witnesses were incompetent. The presumption being in favor of competency, the State must show incompetency. This was not done in this case." Further speaking of this question the court said: "Article 731, Code Criminal Procedure, provides that persons charged as principals, accomplices or accessories, whether in the same indictment or different indictments, can not be introduced as witnesses for one another. The proper rendering of the article is that persons charged as principals to the same offense, or accomplices or accessories to the same offense, either in the same indictment or in different indictments, can not be witnesses for one another. An offense is an act or omission forbidden by positive law, to which is annexed, on conviction, any punishment prescribed in this code. (Article 52, Penal Code.) In this case the prohibited act is betting at a game played with dice. Now, to render incompetent, the witness must be indicted as principal, accomplice or accessory to the same act for which defendant is indicted. The transaction must be the same; a similar act will not suffice. To illustrate: A game of poker begins at dark and the playing is continued all night. During the night a number of persons participate in the game, but not with each other or at the same time. Now, if one should be indicted, those

who did not play with him, or play at the game at the same time at which defendant played or bet, would not be incompetent." Then follows the first extract quoted from the opinion set out above.

The objection of the prosecuting attorney is not a statement of the fact that appellant was indicted for the same offense. In order to render this bill sufficient it must show as a fact that the witness was incompetent. The mere statement from the officer that he was incompetent does not make that a fact. It was his ground of objection to the witness testifying. Traylor v. State, 23 S. W. Rep., 798.

2. There is a still more serious error as we understand the fact, that is, that the evidence does not show that appellant played cards. In other words, that the evidence is insufficient to make out a case. The witness Reid testified that he was deputy sheriff of Johnson County; that on 20th of August, being Sunday afternoon, he, in company with another deputy, had occasion to go into an alley way which runs east and west, between two named streets in the city of Cleburne. John Anderson lived in a house fronting on one of these streets on north side of the alley. There was a servant's house on the west end of the lot, the residence being on the east end fronting one of the streets. When near the servant's house he noticed a door partly open and walked up to it. Defendant and Gee were lying on a bed in this servant's house. They were lying cross way of the bed; appellant was near the head of the bed and Gee toward the other end. As they approached the door he saw appellant and saw him quickly put a card case under the pillow, and Gee stuck something under the quilts of the bed. In going into the room he ordered them to get up and asked them what they were doing. They replied, nothing. Witness turned down the pillow and found a card case; he looked under the quilts and found a deck of cards; also found a dime under the cloth on the bed about where it would have been between the two men. He took them to town with him; he took them to the sheriff's office and phoned for the assistant county attorney. He subsequently arrested defendant and filed this complaint. Upon cross-examination he said he did not see defendant playing cards, but as he approached he saw appellant stick a card case under the pillow, and subsequently found the cards under the quilts. This was in the servant's house occupied by Johnson Anderson and his wife. This was about four o'clock in the evening. He did not tell appellant what he wanted with him until they reached the sheriff's office. Appellant asked him several times why he wanted him but witness made no answer. Upon reaching the sheriff's office he told him that he arrested him for playing cards at that house, and appellant denied playing cards, and insisted he had not been playing cards, and asked the officer to search him to show that he had no money with which he could have been gambling. The officer did not search him. He says: "I did not see them playing cards that afternoon, but arrested them for reasons stated." This is the State's case in its entirety.

The witness Farr testified that he was the negro cook for Mr. John

Anderson at his residence. The servant's house was on the lot and in which he, witness Farr, slept and lived. It was Sunday afternoon when the arrest occurred; he was not at home at that time, but had been there all day until after dinner Sunday when he went away. Before leaving·home he went to his house and sat down. and played some cards. They were his cards, and they were the cards that Mr. Reid, the State witness, had. After playing a while he put the cards under the cover or under the mattress. "The case was up at the other end of the bed and I think under a pillow when I left. There was no one there at that time but myself." He says he had known appellant for years and sometime he comes to his house to visit him. That the house was the servant's house in which he lived, and had a bed 'and dresser and such things in it, and is about fifty feet from where the white people live.

Appellant testified in his own behalf, and that he was at this servant's house on the occasion mentioned. That when he went there Farr, the former witness, was not at home, but he found Richard Gee lying on the bed; the door was open, and he told him to come in. He went in and laid down across the bed on which Gee was also lying. He had been lying there just a few minutes when Mr. Reid come to the door. "I saw Mr. Reid coming down the alley long before he got to the house. We were not playing cards and had not been playing cards. I did not play cards there that day. If there were any cards there I did not know it. I was on the west end of the bed and Richard Gee was on the east end. I did not have a cent of money to play cards with. When they told me they had arrested me for playing cards, I was so surprised and I then tried to get Mr. Reid to search me and see that I had no money; he would not do it. I did not play or bet at a game played with cards that day. I did not put that card case under the pillow. I did not see or have that card case. If there was any money on the bed it did not belong to me. I' did not have any money."

This is the record so far as the statement of facts is concerned. Without a discussion of the evidence, we hold under the authorities as applied to this evidence the State has not made out a case. Hanks v. State, 54 Texas Crim. Rep., 1; Lucas v. State, 57 Texas Crim. Rep., 198; Looper v. State, 56 Texas Crim. Rep., 498.

For the reasons indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*