ROSALIO RAMIREZ v. THE STATE.

No. 15048.   Delivered March 22, 1933.
Reported in 58 S. W. (2d) 829.

The opinion states the case.

*Baker & Baker,* of Coleman, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is transporting intoxi-

cating liquor; the punishment, confinement in the penitentiary for one year.

The opinion delivered March 16, 1932, is withdrawn, and the following substituted therefor:

Two inspectors of the United States Immigration Service, Border Patrol, situated at Del Rio, Texas, were returning from Eden to Paint Rock along a public highway. As they drove down the highway they saw appellant and another Mexican driving toward them. They waved at appellant and his companion in an endeavor to stop them, it being the intention of the officers to interrogate the parties with reference to their status as immigrants. Instead of stopping, appellant, who was driving the car, increased his speed and passed the officers. The officers pursued the parties for about half a mile. Finally, they drove in front of appellant's car and compelled him to stop. The officers asked one of the parties to get out of the car. At this point the officers had noticed nothing unusual about the automobile. As one of the Mexicans got out of the car, the officers saw a pistol and a half pint bottle of liquor on the front seat. Also they saw a clear glass gallon jug and a funnel in the back seat of the car. They testified that they smelled the odor of whisky about the car. Instituting a search, the officers lifted the seat and found seven and one-half pints of whisky in pint bottles. They carried appellant and his companion to Paint Rock and delivered them to the sheriff. The officers were not armed with a warrant of any character. They were wearing their regulation uniforms at the time they made the search. At this juncture we quote, in part, the testimony of one of the officers, as follows:

"We stopped their car and made both of them get out. Up to the time we stopped them we had seen no whisky. * * * At that time we had run in front of the defendant in his car and stopped him. It was our object to interrogate the Mexicans with reference to their status as immigrants. That was our sole purpose in stopping them at that time."

A physician testified that he had known appellant for about two years, and had treated him for an enlarged prostate gland. He said appellant was passing pus, which led him to believe that he was suffering from an abscess. Under such circumstances, in passing urine, there was intense pain, and in the treatment of such condition, whisky would relieve the pain. Witnesses for appellant testified they had known appellant for a number of years. They said that he was a farmer in Concho county, where he had lived since he was fifteen years of age.

Further, they testified that appellant's general reputation as a peaceable and law-abiding citizen was good. Appellant's wife testified that appellant had never been convicted of a felony. Further, she testified that physicians had prescribed whisky for use by appellant in relieving his ailment. She said that since receiving such advice, appellant had been using whisky.

It appears affirmatively from their testimony that the immigration officers were not officers of the state of Texas, but were engaged in the immigration service of the United States, and were endeavoring to discover persons violating the alien law. Their purpose in commanding appellant to stop and get out of his car was with the view of ascertaining whether or not he was an alien. The point at which the occurrence took place was apparently in the neighborhood of 175 miles from the nearest point on the Mexican border. Appellant and his companion were citizens of Concho county and had been residents of that county for many years, although of Mexican birth or extraction. There is no suggestion that the officers had any knowledge or information that the Mexicans were violators of the law in any particular.

This court is not well informed as to the custom sanctioned by the United States Government with reference to the manner of procedure of immigration officers in detecting violators of the law. In correspondence with the officials of the Bureau of Immigration, we have been referred to the following quotation from an opinion of the Supreme Court of the United States. Carroll v. United States, 267 U. S., 132, 45 S. Ct., 280, 283, 69 L. Ed., 543, 39 A. L. R., 790: "On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid. * * * Travelers may be so stopped in crossing an international boundary because of national self-protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in."

In Carroll v. United States, supra, it is asserted that the search and seizure of an automobile in the absence of "probable cause," as that term has been defined, is illegal, the court using the following language: "But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known

to a competent official authorized to search, probable cause for believing that their vehicles are carrying contrabrand or illegal merchandise."

From the testimony in the present case, it is made evident that the officers who searched the appellant's car had neither information nor suspicion that it contained contraband goods, that is, that it contained intoxicating liquor. Their sole purpose, according to their statement, was to inquire as to the violation of the immigration laws of the United States. They had never seen appellant or his companion before. They had no information with reference to them. There was nothing in the conduct of appellant or his companion at the time they were accosted upon the road which is claimed to have given the officers any information upon the subject of law, violation. When appellant and his companion were accosted, they declined to stop and were ultimately forced to stop by the action of the officers, who were the witnesses in this case. At the time they were stopped and at the time appellant was commanded to get out of the car, the officers had no knowledge or suspicion, so far as the record shows, and no probable cause or belief that the car contained intoxicating liquor. Their discovery of the intoxicating liquor resulted alone from the search of the car. That the action of the officers detailed by them was illegal and was in the nature of an assault of appellant and his companion and putting them in restraint is not, in our opinion, open to serious question. As above stated, the only reason for the conduct of the officers, and apparently the only reason existing, was the fact that appellant and his companion were Mexicans, and that this was observed by the officers. As stated hereinabove, the scene of the transaction was in day time on the public road, in the county in which appellant lived and had lived practically all of his lifetime, where he was known as a reputable citizen according to the undisputed testimony in the case, and many miles from the border of the state. In the state of Texas are many Mexican citizens, nearly 700,000 of them, according to the latest United States census report. They are distributed in various portions of the state and are perhaps more numerous in the western portion. Many of them are natives of Texas and others are residents of long standing. That an immigration officer has authority, upon the facts detailed in the present instance, to arrest and detain by force a citizen of the state upon no information of a law violation at the time except the fact that he is of Mexican descent is thought can not be given legal sanction.

The inculpatory evidence relied upon by the state having been obtained through an illegal arrest of appellant and search of the vehicle in which he was riding its reception in evidence over the objection of appellant was error prejudicial to him. Under the circumstances, the reception of the evidence was in direct opposition to the statutory law of the state set out in article 727a, C. C. P., in which it is declared that evidence obtained through an illegal search shall not be received.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.